Caruthers J.,
delivered the opinion of the Court.
William Rawlings made his Will, and died in 1827. He disposed of his whole, estate in these words:
“I lend unto my beloved wife, Sally Rawlings, all my estate, real and personal, during her natural life, or widowhood,” and at her death, was to be equally divided between all his children. The complainants are the children. Their husbands and descendants file this bill to recover the land.
The widow died in 1854, without having married again. In 1842, she sold and conveyed her life estate in the land to the Hoovers, and gave them possession, with the exception of a reservation made in the contract. About the same time, quit claim deeds were executed by most of the complainants for their interests in the remainder, for the consideration, perhaps, of $50 each.
The wife of Prater, and three others, daughters of the testator, were married women at the time they signed the deeds with their husbands, and were never privily examined, so as to make the same obligatory, upon them.
*546 The bill was filed in April, 1856, and in October of the next year, a decree was made by the Chancellor, settling the rights of' the parties, from which, there was an appeal to this Court, when the same was affirmed, by the consent of the parties, in January, 1858, and the cause remanded for. its execution.
By this decree, it was settled that the deeds signed by the four femes covert, were null and void as to them, and did not, in any way, divest them of their respective shares in said land; but that they should receive the same out of the proceeds of the land in controversy, which was ordered to be sold for partition. No other parts of the case need now be noticed, except that which relates to them, as they alone, appeal from the last decree.
By this decree, which was made in April, 1860, by the Chancellor, the shares of these four married women are withheld from them until the death of their husbands, respectively, upon the ground, that as they all had children born and living, that they were tenants by courtesy in choate, and to this interest the purchasers from them were entitled by virtue of their deeds of 1842. So, it was decreed, that upon the execution of bonds, with good security by the purchaser, that these shares should be paid to the said femes coveft, or their representatives, or heirs, at the death of their husbands. The same should be retained, without interest, till that time.
1st. To this part of the decree, it is objected, that the former decree, by which the rights of the parties were settled, could only be altered or changed, by rehearing at the same term, or bill of review afterwards, *547 in proper time and form. It is difficult to see how this objection to the last decree can be resisted: 10 Ycr., 200. It can only be obviated, by showing that there is no conflict. The] first decree gives the property to the wives, and the last only postpones the time that they are to receive it.
2nd. But, if the Chancellor had the right to make the decree at the time he did, is it right, as a question of law ? Had the husbands any rights as tenants by the courtesy, in 1842, or since, which would pass to their vendees under their deeds? The decree assumes, that they were tenants by the courtesy in choate, and the purchasers, from them were entitled to the benefit of this contingent right. It was contingent and uncertain, because it can only arise in any case, provided the husband survives the wife.
But, a man cannot be tenant by the courtesy of a remainder or reversion, expectant on an estate of a freehold, unless the particular estate fall in during the coverture: 1 Just., (Coke) 29; 1 Green. Cruise, 166; 4 Kent, 29.
The interest of the wives was a remainder, in this case, at the time the deeds were made by the husbands; for they must be ' regarded as the sole deeds of the husbands, as they were perfect nullities, as to the wives, without private examination. If the wives had died before the termination of the life estate, the husbands courtesy right woald have entirely failed. It had no existence, then, until 1854, when Sally Rawlings, the tenant for life, died. But at that time, the Act of 1849 ch. 36, was in force, and provided that the husband should not “sell his wife’s real estate, during her life, *548 without her joining in the conveyance in the manner prescribed by law, in which married women shall convey lands.” If he could not then sell it so as to affect her rights, without her concurrence in the legal mode, how could his sale and conveyance, twelve years before, by relation, operate upon her rights ? This would seem to be absurd, yet it is necessary to make out the case and sustain the decree.
But, for another reason they had no courtesy rights to pass to their vendees. They could have no such rights, either in choate or consummate, until the particular estate ended; and having made their deeds before that time, they had no such connection with the estate as husbands, as to constitute them tenants by the courtesy, or at least, they were estopped, by such deeds, to set up any claim whatever to the land against their vendees.
The remainder interest, then, of these married women, was not affected by the deeds of their husbands, nor can the enjoyment of their rights be postponed by anything that has transpired. The spirit and intention of the Act of 1849, is, that wives shall not be deprived of the enjoyment of. their real estate by any act of their husbands, or by his creditors even, without their solemn and free concurrence in the single mode prescribed by law.
The result is, that the decree of the Chancellor is erroneous on this point, and must be reversed. As the land has been sold for partition, the shares of these femes covert will be placed in the hands of a suitable trustee, for their benefit, or vested in other property, to *549 be settled on them, as the Chancellor may think best for their benefit..
The decree will be so modified here, and the cause remanded for its execution. .
As to the point argued as to William Rawlings, it is sufficient to say, that he has not appealed. But if he had done so, we would have to say, that if he chose to relinquish the benefit of the first decree in his favor, he certainly had a right to do so.